IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KATRICE WALKER,              *
    Plaintiff,           *
vs.                          *
                               CASE NO. 4:18-CV-184 (CDL)
COLUMBUS CONSOLIDATED        *
GOVERNMENT,
                             *
    Defendant.
                             *

O R D E R

Katrice Walker is employed by Columbus Consolidated Government ("CCG") in its Department of Public Services ("Public Works"). She asserts that CCG denied her a promotion because of her race, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e-17. CCG filed a summary judgment motion, asserting that Walker was not qualified for the promotion and that the white man it promoted instead of Walker was more qualified. As discussed below, genuine fact disputes exist on Walker's Title VII race discrimination claim, so CCG's motion (ECF No. 7) is denied as to that claim. The motion, however, is granted as to Walker's § 1981 claim. Walker also asserted a Title VII claim for discrimination based on her color, and CCG moved for summary judgment on that claim arguing that Walker had not exhausted her administrative remedies. Walker did not respond to CCG's

summary judgment motion on this claim, so the Court deems it abandoned. *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Walker is a black woman who works as a correctional officer in CCG's Public Works department. Walker has a bachelor's degree in criminal justice and a master's degree in public administration. Walker is a certified correctional officer with a firearm certification. She is also certified as a CCG

2

customer service specialist and holds a CCG HR Supervisory II certification.

Walker began working for CCG in 2005. She has served as a correctional supervisor in the rainwater division; a chemical application technician; a public relations coordinator; a correctional officer at the recycling center; and a risk management investigator. In her correctional officer/supervisor roles, Walker supervised inmates on work details but did not supervise CCG employees. Walker is currently a correctional supervisor in the rainwater division.

In 2017, the position of community service coordinator came open. The community service coordinator supervises the Public Works community service division, which oversees parolees as they complete their community service obligations. Three full-time and twelve part-time CCG employees report to the community service coordinator. The written job description includes the following requirements:

1. "Knowledge of record keeping, report preparation, filing methods, and record management techniques."

2. "Knowledge of supervisory practices, procedures, and policies, including training and work inspections."

3. "Knowledge of standard business arithmetic."

4. "Knowledge of basic budgetary principles and practices."

5. "Skill in the administration of staff and activities, both directly and through subordinate supervision."

6. "Bachelor's Degree in Business Administration, Public Administration, or related field is required."

7. "Experience sufficient to thoroughly understand the work of subordinate positions and to be able to answer questions and resolve problems, usually associated with one to three years['] experience or service."

Walker Dep. Ex. 18, Community Service Coordinator Job Description, ECF No. 11-1 at 101.

Walker applied for the community service coordinator position and received an interview with a three-person panel led by Public Works Director Pat Biegler. The panel also interviewed Ralph Blakely, a white male, who was Walker's supervisor and had five years of experience as a crew supervisor in the Public Works rainwater division. Biegler Aff. ¶ 14, ECF No. 7-2. Blakely does not have a college degree. The interview panel decided that Blakely was the best candidate based on his experience and interview, and Biegler offered Blakely the community service coordinator position.

After Walker was not selected for the community service coordinator position, she discussed the issue with Biegler, her department director, who told Walker that some of her interview answers were unsatisfactory. Although Walker discussed the issue with a member of CCG's human resources department, she did not complete a "Fair Treatment" form or pursue the matter further via CCG's fair treatment procedures.

DISCUSSION

## I. Walker's Title VII Claim

Title VII prohibits employers from intentionally discriminating against an employee based on her race. *See* 42 U.S.C. § 2000e-2(a)(1).[1] Walker did not point to any direct evidence of discrimination, so she must present sufficient circumstantial evidence of discrimination to survive summary judgment.[2] She may do that using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the employee must establish a prima facie case of discrimination. *E.g., Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (per curiam). If she establishes a prima facie case, the employer may proffer a legitimate nondiscriminatory reason for its decision. *Id.* If the employer meets its burden, the plaintiff must establish that the proffered reason was pretextual. *Id.*

---

[1] Section 1981 also prohibits employers from engaging in intentional race discrimination against an employee. 42 U.S.C. § 1981(a). As discussed in more detail below, though, the Court grants CCG's summary judgment motion as to Walker's § 1981 claim because Walker did not point to evidence to establish municipal liability on that claim.
[2] Walker contends that CCG's director of Public Works once stated in her presence that "if black people stop wanting people to give them something, they will be better off." Walker Dep. 133:8-9. This statement is not direct evidence of discrimination because there is no evidence that it was related to the community service coordinator decisionmaking process. "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). "[R]emarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Id.*

Walker may establish a prima facie case of failure to promote by demonstrating that (1) she belonged to a protected class, (2) she was qualified for and applied for a position her employer was seeking to fill, (3) she was rejected despite her qualifications, and (4) the employer filled the position with someone outside her protected class. *Id.* at 768. CCG does not dispute that Walker belongs to a protected class, that she applied for the community service coordinator position, that she was rejected, or that it filled the position with someone outside Walker's protected class. CCG argues, however, that although it considered Walker qualified enough to offer her an interview, Walker was not actually qualified for the position because she did not have one to three years of experience supervising CCG employees; she only had experience supervising inmates on work details.

CCG pointed to evidence that the Public Works director stated, in an affidavit she prepared to support CCG's summary judgment motion, that the community service coordinator "must have sufficient knowledge and experience – approximately 1 to 3 years – in supervising subordinate employees." Biegler Aff. ¶ 6. But, the written job description requires only "[k]nowledge of supervisory practices, procedures, and policies, including training and work inspections," "[s]kill in the administration of staff and activities, both directly and

through subordinate supervision," and "[e]xperience sufficient to thoroughly understand the work of subordinate positions and to be able to answer questions and resolve problems, usually associated with one to three years['] experience or service." Walker Dep. Ex. 18, Community Service Coordinator Job Description, ECF No. 11-1 at 101. Thus, the Court finds a genuine fact dispute on whether the community service coordinator position *required* one to three years of experience supervising CCG employees. Viewed in the light most favorable to Walker, a jury could conclude that it did not and that Walker was qualified for the community service coordinator position.

CCG proffered a legitimate nondiscriminatory reason for its decision to select Blakely instead of Walker for the community service coordinator job: Blakely was better qualified because he had more supervisory experience and a better interview. Thus, Walker "must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Vessels*, 408 F.3d at 771. "This evidence must reveal 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'"

*Id.* (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)).

A plaintiff may establish pretext by pointing to evidence that the employer selected a candidate who was, based on the employer's own objective criteria, unqualified for the position instead of the plaintiff, who was qualified. *See Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1107–08 (11th Cir. 2001), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) *as recognized in Crawford v. Carroll*, 529 F.3d 961, 971, 973 (11th Cir. 2008) (finding that county's hiring of an employee who was unqualified for a position instead of the plaintiff, who was qualified, supported an inference of discrimination); *see also Vessels*, 408 F.3d at 772 (finding a genuine fact dispute on pretext where, under the employer's own regulations, the position required qualifications that the selected candidate did not have but the plaintiff did).

Here, Walker pointed to evidence from which a jury could conclude that she met the objective criteria listed in the job description. She also pointed to evidence from which a jury could conclude that Blakely did not meet the objective criteria because he did not hold a college degree—a qualification that was "required" by the community service coordinator job description. Walker Dep. Ex. 18, Community Service Coordinator Job Description, ECF No. 11-1 at 101. CCG argues, though, that

8

a college degree was not actually required for the community service coordinator job. In support of this argument, CCG points to testimony from several decisionmakers, mainly in the form of affidavits prepared for summary judgment purposes, that they did not consider a degree to be a requirement for the community service coordinator job. But CCG did not point to any authority which squarely holds that an employer may have an employee's discrimination claim summarily dismissed simply by pointing to post-hoc testimony by its decisionmakers that a written job description doesn't really mean what it says.

The Court recognizes that some confusion may exist based on *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007). In *Springer*, the Court of Appeals affirmed the district court's grant of summary judgment in favor of an employer on the plaintiff's failure to promote claim because the plaintiff did not establish pretext. The plaintiff attempted to prove pretext by pointing to a job requisition form which listed a four-year college degree as a job requirement. The Court of Appeals explained that the "job requisition form" for the position did list a four-year college degree as a requirement, but the hiring director testified that a separate written "job description" permitted several years of experience

as the equivalent of a degree.[3] *Id.* So, when the employer in *Springer* promoted a candidate with significant experience but no degree over the plaintiff, who had a degree but less experience, the plaintiff could not establish pretext just by pointing to the formal requisition form because the separate written job description said that experience could be substituted for formal education. Thus, under *Springer*, where the employer's written job description permits it to consider experience as the equivalent of formal education, its consideration of such experience cannot be pretextual.

In contrast, here, the written job description unequivocally stated that a college degree was required for the community service coordinator position. CCG did not point to any evidence that the job description was supplemented by a separate document permitting experience in lieu of education or that CCG had an official policy that permitted it to weigh equally candidates who had an equivalent combination of education, training, and experience, regardless of what the official job description required. Thus, a genuine conflict exists between the written job description and the testimony of some of CCG's employees that a college degree wasn't really required notwithstanding the unambiguous statement of the

---

[3] The Court of Appeals and the district court did not spend much time discussing the "job requisition form" and the "job description," but the district court records available on PACER suggest that these were two separate documents.

requirement in the only written description of the job qualifications. The Court emphasizes that it does not find today that the community service coordinator position actually required a college degree, that Blakely failed to meet the minimum qualifications for the job, or that experience supervising CCG employees was irrelevant. Rather, the Court finds that Walker pointed to evidence that, with all reasonable inferences construed in her favor, would allow a reasonable jury to conclude that CCG engineered the process to favor Blakely, who was white, over Walker, who was black, by adding an unwritten requirement that Walker did not have but Blakely did and deleting a written requirement that Blakely did not have but Walker did.[4] Accordingly, CCG is not entitled to summary judgment on Walker's Title VII claim.

## II. Walker's § 1981 Claim

CCG claims that even if Walker's Title VII race discrimination claim survives summary judgment, her § 1981 claim cannot because the promotion decision was subject to meaningful administrative review that Walker did not pursue. Walker

---

[4] The Court also emphasizes that this is not a comparative qualifications case, where a plaintiff can only establish pretext by showing that there were such significant disparities between her qualifications and those of the selected candidate that no reasonable person could have chosen the selected candidate over the plaintiff. Rather, the Court finds that Walker met her burden of establishing pretext by pointing to evidence from which a jury could find that Blakely was not qualified for the community service coordinator position based on CCG's own objective criteria.

brought her § 1981 claim against CCG through 42 U.S.C. § 1983. To prevail on this claim, Walker must demonstrate that the promotion decision was the result of a CCG custom, practice, or policy. *See Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). But, "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Id.* at 1401. So, the key question for the Court is whether the Public Works director's promotion decision was subject to meaningful administrative review.

Under CCG's Fair Treatment policy, employees who believe that they have been subjected to unlawful discrimination based on race may pursue a written complaint. Walker Dep. Ex. 7, Fair Treatment Policy, ECF No. 11-1 at 67-69. To seek review under this policy, an employee must complete a Fair Treatment form and submit it to her department director. *Id.*, ECF No. 11-1 at 69. If the department director does not resolve the complaint, then the employee should escalate the issue to the human resources director, who may "propose alternate solutions or suggestions on appropriate and acceptable alternatives." *Id.* If the human resources director does not resolve the complaint, then the

12

employee may seek review by the city manager, who, "at his option, will confer with appropriate individuals, review fair treatment procedure documentation, and communicate a final decision through the Human Resources Director." *Id.* The Public Works department is under the deputy city manager of operations, who reports to the city manager.[5] Hollowell Aff. ¶ 6, ECF No. 18-6. Because the Fair Treatment Policy permits a CCG employee to escalate complaints of alleged discrimination to the city manager, who has the power to override an employment decision by one of his subordinates like the Public Works director, the Fair Treatment Policy provides meaningful administrative review. Thus, the Public Works director did not have final policymaking authority over the promotion decision, and the Court grants CCG's summary judgment motion as to Walker's § 1981 claim.

CONCLUSION

For the reasons set forth above, the Court denies CCG's summary judgment motion (ECF No. 7) on Walker's Title VII race discrimination claim. The Court grants CCG's summary judgment

---

[5] Walker objects to this affidavit because it was part of CCG's supplemental evidence. The Court permitted CCG to supplement the record with additional affidavits. The Court understands that new evidence is not normally permitted to support a reply brief. That is why the Court gave Walker an opportunity to respond to it with her own evidence and argument. Walker argues that she cannot respond to paragraph 6 of Hollowell's affidavit without more discovery, but it is disingenuous to suggest that Walker had no opportunity to learn about CCG's organizational structure or Fair Treatment Policy during discovery.

motion on Walker's § 1981 claim and her Title VII claim for discrimination based on her color.

IT IS SO ORDERED, this 10th day of October, 2019.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA